UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:23-cv-00284-MR-WCM

| | |
|---|---|
| RYAN CRAIG STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>MONTREAT COLLEGE, DR. PAUL J. MAURER, DR. DANIEL BENNETT, DR. DOROTHEA SHUMAN, and DR. RYAN ZWART,<br><br>Defendants. | **BRIEF IN SUPPORT OF MONTREAT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MOTION TO STRIKE THIRD AMENDED COMPLAINT** |

Defendant Montreat College ("Montreat"), submits this Brief in support of its Motion to Dismiss all claims against it in the Second Amended Complaint (D.E. 14), with prejudice, and its motion to strike the Third Amended Complaint (D.E. 17).[1]

## STATEMENT OF THE CASE

Plaintiff, a former student at Montreat, was dismissed from the college on October 22, 2020, due to disrespect toward his professors, harassment, disruptive behavior, and other issues. (Second Amend Compl. ¶ 59; See also, First Amend Compl. Ex. PPP, D.E. 1-75.) He then filed this lawsuit in state court on October 24, 2022, vaguely asserting that Montreat and members of its faculty "committed tort and

---

[1] Plaintiff has failed to properly serve the defendants other than Montreat (the "Individual Defendants") with valid summonses. The Individual Defendants filed a motion to dismiss for failure to prosecute before removal. That motion is still pending. The Individual Defendants intend file a separate motion to dismiss, under Rule 12, in due course.

criminal violations against him, consisting of gross misconduct[.]" (D.E. 1-1, Original Compl. at 1-2.) Montreat moved to dismiss the Original Complaint. (*See* D.E. 1-2.) Plaintiff repeatedly delayed the hearing on Montreat's motion, stalling the proceedings for nearly four months. Then, just days before the hearing on Montreat's motion to dismiss, Plaintiff filed an Amended Complaint in a transparent attempt to moot the motion. (D.E. 1-8.) Because the Amended Complaint mentioned federal claims for the first time, Montreat promptly removed the case to this Court on October 6, 2023. (D.E. 1.)

After a status conference held on November 3, 2023, the Court ordered Plaintiff to file a Second Amended Complaint on or before December 1, 2023. (D.E. 4, hereinafter the "First Order".) The Court noted that the First Amended Complaint—which was remarkably verbose and repetitive and included over 800 pages of exhibits—failed to comply with Rule 8 of the Federal Rules of Civil Procedure. (*Id.*) Plaintiff failed to comply with the First Order. Instead, he filed a motion for extension of time four days late, on December 5, 2023. (D.E. 8.) Montreat filed an opposition to the motion for extension of time and moved to dismiss Plaintiff's claims due to his failure to comply with the First Order. (D.E. 9.) The Court, however, granted Plaintiff's untimely motion—extending through December 22, 2023 the period in which he must file his Second Amended Complaint—and denied Montreat's motion to dismiss as moot. (D.E. 11, hereinafter the "Second Order").

Plaintiff failed to comply with the Second Order as well. On December 29, 2023, after Montreat filed a second motion to dismiss for failure to comply with the Court

2

order, (D.E. 12–13, hereinafter the "Second Motion"), Plaintiff filed his untimely Second Amended Complaint and a second motion for extension of time seeking leave to file the Second Amended Complaint through December 27, 2023, two days prior. (D.E. 14–15.)

On January 11, 2023, Plaintiff filed another motion, this time seeking a retroactive extension of time to file the Second Amended Complaint through December 29, 2023. (D.E. 16.) This third motion for extension of time did not show, as required by Local Rule 7.1(b), that counsel for Montreat did not consent to third motion for extension of time. The same day, Plaintiff filed a document entitled "Third Amended Complaint," without the consent of any of the Defendants or leave of court. (D.E. 17.)

For the reasons set forth in the Second Motion and the reasons set forth below, this Court should dismiss Plaintiff's claims against Montreat in the Second Amended Complaint, with prejudice, and strike the Third Amended Complaint.

## SUMMARY OF FACTUAL ALLEGATIONS

In the Second Amended Complaint, Plaintiff asserts eight causes of action: (1) violation of the First Amendment of the United States Constitution, (2) violation of the Fourteenth Amendment of the United States Constitution, (3) a claim under Title 42 U.S.C. § 1983, (4) a violation of Title IV of the Civil Rights Act of 1964, (5) a violation of Article IX of the Education Amendments of 1972, (6) a violation of the Age Discrimination Act of 1975, (7) a violation of the Family Educational Rights and Privacy Act of 1974, and (8) false imprisonment under the Indian Law and Order

3

Code.[2] Each claim fails as a matter of law, and therefore Plaintiff's action should be dismissed.

The gravamen of Plaintiff's operative complaint appears to be Plaintiff's claims that Montreat's enforcement of the Community Standards provisions of its General Behavior policy in its Academic Catalogue and Student Handbook unconstitutionally prohibited his expression of religious beliefs and speech. (Second Amend Compl. ¶¶ 21–24.)

Despite failing to serve the Individual Defendants, Plaintiff also makes a number of allegations about them. As to Dr. Shuman, plaintiff alleges that Dr. Shuman distributed handouts promoting "the LGBTQ agenda" and containing sexually explicit content in September of 2019; attempted to force Plaintiff to share the restroom with people of a different "biological gender;" ordered him not to pray for an individual who was dismissed from the drug rehabilitation program; told him "Don't you dare tell anyone about this" regarding the order not to pray; ordered him to change his class presentation/speech topic "regarding the purpose and plan God has for us" and told him he would fail the course if he did not change the topic; forced

---

[2] The unauthorized Third Amended Complaint purports to assert the exact same causes of action as the Second Amended Complaint. (*See id.*) The only material differences between the Second and Third Amended Complaint appear to be that, in the Third: (1) Plaintiff has added a religious exercise and religious expression theory to his First Amendment and Section 1983 claims (*see, e.g., id.* at ¶¶ 61–67, 76–77), and (2) Plaintiff has added allegations to make clear that his False Imprisonment claim is based on his allegations that Defendants required him to share a restroom and tent with persons of the opposite gender and required him to take an exam while ill. (*Id.* at 97–98.)

him to "share a tent with someone of a different biological gender;" notified him that he could not attend a required course "OE 180 Discovery Wilderness Expedition" and dropped him from the course; ordered his tutor to cease rendering services to him, forced him to take a midterm exam while he was sick; yelled at him for standing up during lunch; sent an angry email when she could not locate an assignment he submitted; refused to allow his grade change request; did not provide him with feedback on an assignment in April of 2020; refused to provide him evidence in regard to a grievance related to his course grade in May of 2020; filed a complaint in retaliation for Plaintiff pursuing an academic grievance; and called him in violation of a No Contact Order on October 8, 2020. (*Id.* ¶¶ 27–32, 36, 42–46, 49–55.)

As to Dr. Bennett, Plaintiff merely alleges that Dr. Bennett greeted him by saying "What are you, 40!" in January of 2020; that Dr. Bennett requested Plaintiff to attend a virtual meeting within seven-business-hours-notice in August of 2020; that he submitted a "false police report to the Director of Campus Safety" stating that Plaintiff "stood Dr. Bennet up" by not attending the unspecified meeting; and that Dr. Bennett "issued Plaintiff a Leave of Absence in the form of an Interim Suspension, which is a violation of policy," as a result of a complaint filed by Dr. Shuman. (*Id.* ¶¶ 33, 38-39, 54.)

As to Dr. Zwart, Plaintiff alleges that Dr. Zwart sent him an email on October 19, 2020, cautioning him "on using Christian belief as a means of suicide prevention in the future. As someone who has lost a dear friend (who was one of the strongest believers I have known) to suicide, hearing this perspective is extremely challenging

and emotionally straining" and noting that Plaintiff's statements were "unempathetic;" that Dr. Zwart ended a meeting with a prayer; that Dr. Zwart "sent an unprofessional email" on October 6, 2020, which said "DO NOT EMAIL ME THESE!" and did not permit resubmission of an assignment; and that Dr. Zwart did not resolve a Learning Management System ("LMS") issue regarding submitting assignments more than once. (*Id.*¶¶ 41, 48, 56–58.).

As to Dr. Maurer, Plaintiff does not set forth any specific allegations. Dr. Maurer is only mentioned in a cursory fashion in Plaintiff's introduction section and does not appear in the substantive portion of the Second Amended Complaint at all. (*Id.* ¶ 3.)

As set forth below, none of Plaintiff's allegations give rise to any cognizable claims, and therefore the claims against Montreat should be dismissed with prejudice.

## **ARGUMENT**

### I.    **The Court Should Dismiss the Claims Against Montreat**

#### *A.  Standard of Review*

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828 (1993). To survive a motion to dismiss, the factual allegations in the complaint must "raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, a complaint must contain "enough facts to state a claim to relief

6

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under the Rule 12(b)(6) analysis, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Although a plaintiff's allegations are accepted as true in the 12(b)(6) context, courts "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). It is the Plaintiff's burden "to set forth facts sufficient to allege each element of [their] claim." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002).

While courts review *pro se* complaints with some grace, it is not the court's obligation "to discern the unexpressed intent of the [*pro se*] plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006); *see also Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) (noting that "generosity" in reviewing *pro se* complaints does not equate to "fantasy"); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that courts should not "conjure up questions never squarely presented to them"). Like all plaintiffs, *pro se* claimants must comply with *Twombly* and provide "'more than labels and conclusions'" in order to survive dismissal. *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

For the reasons set forth herein, the entire action against Montreat should be dismissed for Plaintiff's failure to state a claim.

### B. Plaintiff Has Failed to State Any Claims Against Montreat

Plaintiff has failed to state a claim upon which relief may be granted as to any of the claims set forth in the Second Amended Complaint. Rather than offer specific factual allegations that would entitle him to relief under any cognizable legal theory, Plaintiff has raised a host of claims that are not available to him and offered no factual allegations that might render any of his claims plausible.

i. Plaintiff's "First Amendment" and "Fourteenth Amendment" Claims Must be Dismissed Because There is No Private Right of Action Under Those Constitutional Amendments

The First and Fourteenth Amendments to the United States Constitution do not provide a private right of action. It is well-established that 42 U.S.C. § 1983 ("Section 1983") provides the appropriate cause of action for all "citizens injured by an abridgement of those rights" guaranteed by the First and Fourteenth Amendments to the United States Constitution. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 611 (2008). "A claim that a party's Constitutional rights have been violated . . . must be pled under the statutory mechanism for such claims, 42 U.S.C. § 1983." *McGowan v. New Jersey*, Civil Action No. 08-5841(FLW), 2009 U.S. Dist. LEXIS 50463, at *21 (D.N.J. June 16, 2009) (dismissing "First Amendment" cause of action) (citing *American General Life and Accident Ins. Co. v. Ward*, 509 F. Supp.2d 1324, 1334-35 (N.D. Ga. 2007) ("Where federal statutes provide a remedy to redress alleged constitutional violations, there can be no independent implied cause of action under the Constitution." (internal citations omitted)); *see also Freeman v. Harris*, No. 3:18-cv-16913 (BRM) (TJB), 2021 U.S. Dist. LEXIS 121278, at *5-6 (D.N.J. June 28,

2021) (dismissing attempt to assert an independent "Fourteenth Amendment" cause of action); *Laster v. Georgia*, No. 1:20-CV-81 (LAG), 2020 U.S. Dist. LEXIS 253347, at \*6 (M.D. Ga. July 1, 2020) (same). Here, Plaintiff seeks to set forth independent "First Amendment" and "Fourteenth Amendment" claims against the Defendants. (Second Amend Compl. ¶¶ 61-75.)[3] Since no private rights of action exist as a matter of law as to Counts I and II of the Second Amended Complaint, those claims should be dismissed.

ii. The Court Should Dismiss Plaintiff's 42 U.S.C. § 1983 Claims for Failure to Meet the "Color of Law" Requirement.

Plaintiff's Section 1983 claim should be dismissed for failure to allege any state action and failure to meet the "color of law" requirement. By its plain terms, Section 1983 only applies to persons who act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. When a plaintiff fails to plausibly allege that a defendant acted "under color of state law" or acted pursuant to a state policy or custom, Section 1983 claims should be dismissed. *See McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 942-43 (M.D.N.C. 2011); *see also Cash v. Lees-McRae Coll., Inc.*, No. 1:18CV52, 2018 U.S. Dist. LEXIS 237049, at \*20-21 (W.D.N.C. Aug. 13, 2018).

---

[3]  In addition to the lack of a private right of action, Plaintiff's First Amendment claim also fails, as discussed below, because the First Amendment does not apply to private entities, *see e.g., Dixon v. Coburg Dairy*, 369 F.3d 811, 817 n.5 (4th Cir. 2004), and the First Amendment does not prevent even public schools from controlling the religious content of students' curricular activities. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271, 108 S. Ct. 562, 570, 98 L. Ed. 2d 592 (1988).

9

Absent allegations that the actions of a private college (such as Montreat) are somehow attributable to the state, Section 1983 claims against private colleges and their employees must be dismissed. *See Harr v. Brodhead*, No. 1:11CV263, 2012 U.S. Dist. LEXIS 28450, at *6-7 (M.D.N.C. Mar. 5, 2012) (dismissing Section 1983 claim, stating, "Whatever Duke may have done or not done, it is clear that Plaintiff has not alleged facts sufficient to suggest that the actions of Duke, a private institution, should be treated as actions of the state.").

Courts routinely reject claims that a private college or university acts under "color of state law" due to the receipt of federal or state funding. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (holding that private school did not engage in state action despite receipt of public funds and a high degree of state regulation, noting that "receipt of governmental funds does not make [a private entity's decisions] acts of the State"); *Cash*, 2018 U.S. Dist. LEXIS 237049, at *20 ("Plaintiff . . . alleges that Defendant College is a federally-funded educational facility that is subject to the Title IX rules and mandates. . . The Complaint, however, does not allege that Defendants are state actors or that they acted pursuant to a state 'statute, ordinance, regulation, custom.' 42 U.S.C. § 1983."); *Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003) (affirming dismissal with prejudice and noting that "DePaul is a private university, so [plaintiff] cannot use 42 U.S.C. § 1983" to enforce federal statutes against DePaul); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 84 (2d Cir. 2000) ("Yale, as a private university, did not act under color of law."); *accord, Martin v. Univ. of New Haven, Inc.*, 359 F. Supp. 2d 185, 188-89 (D. Conn. 2005).

Here, Plaintiff admits that Montreat is a private, "non-profit corporation, functioning as an independent Christion institution of higher learning[.]" (Second Amend Compl. ¶ 20.) Plaintiff does not and cannot plausibly allege that Montreat or the Individual Defendants are arms of the state or acting on behalf of the state. Rather, as in the multiple cases cited above, Plaintiff is attempting to allege state action by merely referring to federal aid or funding. (*Id.*) However, it is well-established that the receipt of federal funding by Montreat does not convert the actions of Defendants to actions of the state.

Even assuming *arguendo* that Plaintiff could somehow meet the "color of law" requirement as to the Defendants, which he cannot, his allegations still do not meet the standards for setting forth any First Amendment, Fourteenth Amendment, or other constitutional violations. For example, in order to state a claim under the First Amendment, Plaintiff must plausibly allege that each of the Defendants "operated coercively against [him] 'in the practice of his religion.'" *New Creation Fellowship of Buffalo v. Cheektowaga*, No. 99-CV-460A(F), 2004 U.S. Dist. LEXIS 25431, at *48-49 (W.D.N.Y. July 2, 2004) (quoting *Harris v. McRae*, 448 U.S. 297, 321 (1980)); *see also Turner v. Clelland*, No. 1:15CV947, 2016 U.S. Dist. LEXIS 164965, at *60-61 (M.D.N.C. Nov. 30, 2016) (noting that a Free Exercise claim requires specific allegations that the Defendants substantially burdened plaintiff's religious exercise or "force[d] [him] to disobey his religion precepts or engage in conduct that seriously violated his religious beliefs"); *Yacovelli v. Moeser*, 324 F. Supp. 2d 760, 763-64

(M.D.N.C. 2004) (rejecting claim that assigning book titled *Approaching the Qur'an* violated students' Free Exercise rights under the First Amendment).

Furthermore, the First Amendment does not prevent schools from controlling the content of students' contributions to "activities [that] may fairly be characterized as part of the school curriculum" when those activities are "supervised by faculty members" and "designed to impart particular knowledge or skills to student participants and audiences." *Kuhlmeier*, 484 U.S. at 271, 108 S. Ct. at 570. In these circumstances, "[e]ducators are entitled to exercise greater control over . . . student expression to assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that the views of the individual speaker are not erroneously attributed to the school." *Id.* In particular, schools are empowered to decide "whether to disseminate student speech on potentially sensitive topics[.]" *Id.* In short, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273, 108 S. Ct. 562, 571, 98 L. Ed. 2d 592 (1988). In determining whether a pedagogical concern is "legitimate," judges defer to educators. *Id.* ("[T]he education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges.") "The universe of legitimate pedagogical concerns is by no means confined to the academic; . . . schools must [also] teach by example the shared

12

values of a civilized social order." *Poling v. Murphy*, 872 F.2d 757, 762 (6th Cir. 1989)
(*quoting Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684, 106 S. Ct. 3159, 3165,
92 L. Ed. 2d 549 (1986)). Accordingly, the Supreme Court instructs that, even for
public schools, which are actually subject to the First Amendment, judges should not
intervene in a school's regulation of student speech within a curricular assignment
unless the plaintiff can show that the school's actions had "no educational purpose."
*Id.*

None of the allegations in the Second Amended Complaint give rise to any
plausible argument that any of the Defendants "operated coercively against
[Plaintiff] 'in the practice of his religion," *Harris*, 448 U.S. at 321), nor that they
"force[d] [Plaintiff] to disobey his religion precepts or engage in conduct that seriously
violated his religious beliefs." *Turner*, 2016 U.S. Dist. LEXIS 164965, at *60-61.
Instead, Plaintiff's allegations merely demonstrate legitimate pedagogical concerns
by Plaintiff's educators, such as how to handle discourse in their classes, how to
accommodate students' logistical needs, how the classes should be taught, and certain
lessons that Plaintiff found objectionable.

For the foregoing reasons, Plaintiff's Section 1983 claims should be dismissed
with prejudice under Rule 12(b)(6).

     iii.   <u>The Court Should Dismiss Plaintiff's Claim Under Title IV of the
Civil Rights Act of 1964.</u>

Like the First Amendment and the Fourteenth Amendment, "Title IV does not
provide a separate cause of action." *Carroll v. Millersville Univ. of Pa.*, No. 16-1406,
2019 U.S. Dist. LEXIS 96089, at *14-15 (E.D. Pa. June 6, 2019); *accord, Brown v. Tex.*

*State Univ. Sys. Bd. of Regents*, No. A-13-CA-483-SS, 2013 U.S. Dist. LEXIS 173818, at \*14 (W.D. Tex. Dec. 12, 2013) ("Title IV does not . . . create a private cause of action or, at least, there is no indication in the statute there is authorization for private causes of action"); *see also* 42 U.S.C. § 2000c-8 (providing only that the Attorney General of the United States may bring a claim under Title IV).

Furthermore, Title IV of the Civil Rights Act was designed to remedy segregation in public schools. *See* 42 U.S.C. § 2000c *et seq.* "Plaintiff fails to plead any facts to suggest that either [Montreat] or the [Individual Defendants are] a public school and thereby potentially subject to Title IV. Nor could [he] plausibly make such allegations." *Roe v. Rialto Unified Sch. Dist.*, No. EDCV 19-863 JGB (SPx), 2019 U.S. Dist. LEXIS 211097, at \*7-8 (C.D. Cal. Aug. 22, 2019); *accord*, *Watson v. McDonough*, No. 6:22-cv-1275-HLT, 2023 U.S. Dist. LEXIS 118274, at \*12 (D. Kan. July 10, 2023). To the contrary, Plaintiff alleges in his Second Amended Complaint that Montreat is a "non-profit corporation." (Second Amend Compl. § II(B), p. 5; *id.* ¶ 20.)

Consequently, as with his other causes of action, Plaintiff's Title IV claim wholly lacks merit and should be dismissed with prejudice.

    iv.   <u>The Court Should Dismiss Plaintiff's Claim Under "Title IX of the Education Amendments of 1972".</u>

Under its plain text, Title IX only applies to claims of discrimination on the basis of sex or gender. 20 U.S.C. § 1681(a). It does not apply to allegation of race, religious, or age discrimination, as alleged by the Plaintiff. (Second Amend Compl. ¶ 88.) Specifically, Title IX provides that "[n]o person . . . shall, on the basis of **sex**, be excluded from participation in, be denied the benefits of, or be subjected to

14

discrimination under any education program or activity seeking Federal financial assistance." *Id.* (emphasis added). "No similar provision in Title IX encompasses race or religion. Thus, Title IX's plain text only provides a cause of action for sex-based claims." *Hester v. Washington*, No. 6:22-cv-00002, 2022 U.S. Dist. LEXIS 167970, at *7 (W.D. Va. Sep. 16, 2022); *accord*, Brown v. Porter, No. 2:19cv376, 2019 U.S. Dist. LEXIS 230426, at *64 (E.D. Va. Nov. 26, 2019) (recommending dismissal of Title IX claims where plaintiff's allegations focused on "religiously-based" discrimination); *see also Tanyi v. Appalachian State Univ.*, No. 5:14-CV-170RLV, 2015 U.S. Dist. LEXIS 95577, at *24-26 (W.D.N.C. July 22, 2015). Similarly, Title IX does not apply to allegation of age-based discrimination. *See Benefield v. Bd. of Trs. of the Univ. of Ala. at Birmingham*, 214 F. Supp. 2d 1212, 1219 (N.D. Ala. 2002) ("Title IX does not create separate rights for individuals based on their age."). Therefore, regardless of Plaintiff's references to religion or age, the only potential basis for Plaintiff's Title IX claims is that he was somehow discriminated on the basis of his alleged status as a "straight" or heterosexual male. (Second Amend Compl. ¶ 88.)

"To state a claim under Title IX, a plaintiff must plausibly allege that a federally-funded institution discriminated against him on the basis of sex." *Frierson v. Shaw Univ.*, No. 5:21-CV-45-D, 2023 U.S. Dist. LEXIS 88421, at *10 (E.D.N.C. May 19, 2023). Specifically, a plaintiff "must allege that members of the opposite sex were treated differently in similar circumstances and that the discrimination or bias is on account of sex." *Bowens v. Russell*, No. 21-CV-8136 (LTS), 2021 U.S. Dist. LEXIS 205299, at *10 (S.D.N.Y. Oct. 25, 2021) (citing *Doe v. Columbia Univ.*, 831 F.3d 46,

57-59 (2d Cir. 2016)). In other words, a plaintiff must allege facts which "support a plausible inference that" he was excluded "on the basis of sex." *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020); *see also Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236-37 (4th Cir. 2021) (holding that Title IX discrimination claims require allegations of "but for" causation). When a heterosexual, male plaintiff does not allege facts suggesting that students of the opposite sex or gender "in similar circumstances were treated more favorably or that Defendants treated him differently because he is a man," Title IX claims should be dismissed at the 12(b)(6) stage. *Brown*, 2021 U.S. Dist. LEXIS 205299, at *10-11; *see generally Cox v. Mariposa Cty.*, No. 1:19-CV-01105-AWI-BAM, 2021 U.S. Dist. LEXIS 206796, at *41-42 (E.D. Cal. Oct. 26, 2021) (rejecting discrimination claim asserted by "heterosexual male" where plaintiff did not allege that practices were adopted "because of" that his status as such).

This Court has made it clear that the standards set forth in *Iqbal* and *Twombly* apply to Title IX claims, and that "subjective belief, devoid of factual support, is plainly insufficient" to survive a Rule 12(b)(6) motion to dismiss. *Tanyi*, 2015 U.S. Dist. LEXIS 95577, at *26 (internal quotation marks omitted). In *Tanyi*, this Court dismissed Title IX claims that were based on subjective beliefs and conclusions that the plaintiff, a non-white male, was treated differently than his white and female peers. *Id.* at *20-26.

Here, Plaintiff has fallen far short of meeting any standards set forth in *Iqbal* and *Twombly* with regard to his Title IX claim. The Second Amended Complaint barely makes any reference to Plaintiff's sex or gender, and merely refers to gender-

neutral bathrooms or a gender-neutral tent setup. Nor does the Second Amended Complaint refer to any persons similarly situated to the Plaintiff of the opposite sex or gender. While Plaintiff sets forth general allegations that he was a straight white male, he does not plausibly allege that he was discriminated against because of his sex, and he does not even attempt to identify any similarly-situated students of a different sex who were who were treated more favorably.

Since there are simply no plausible allegations that any of the Defendants discriminated against Plaintiff based on sex, Plaintiff's Title IX claims should also be dismissed.

v.   The Court Should Dismiss Plaintiff's Claim Under the Age Discrimination Act of 1975.

The Age Discrimination Act of 1975 ("ADA") provides: "No person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102, *et seq.* Alternatively put, a recipient of federal financial assistance may not "use age distinctions or take any other actions which have the effect, on the basis of age, of . . . [d]enying or limiting individuals in their opportunity to participate in any program or activity receiving Federal financial assistance." 45 C.F.R. § 90.12(b)(2).

The ADA provides a limited private right of enforcement that is confined to seeking injunctive relief against the entity that receives federal funds. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 381-84 (M.D. Pa. 2001). Specifically, § 6104(e)(1) provides individuals may bring suit "to enjoin a violation of this Act by any

program or activity receiving Federal financial assistance" and further provides that plaintiffs who prevail may receive "the costs of suit, including a reasonable attorney's fee[.]" 42 U.S.C. § 6104(e)(1). Federal courts have noted that Congress "purposely excluded a private right of action to seek monetary damages under the ADA." *See Young v. W. Va. Univ.*, Civil Action No. 1:23-CV-29, 2023 U.S. Dist. LEXIS 156328, at *24 (N.D.W. Va. Aug. 8, 2023) (citing *Tyrell*, 134 F. Supp. 2d at 383).

Under the ADA, no action in court "shall be brought . . . if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2). Administrative exhaustion requires "proper exhaustion of administrative remedies" so that the institution can address the merits of a complaint. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To establish administrative exhaustion under the Act, a plaintiff "shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health, Education, and Welfare [Secretary of Health and Human Services], the Attorney General of the United States, and the person against whom the action is directed. . . . ***No action [seeking to enforce the ADA] shall be brought . . . if administrative remedies have not been exhausted***." 42 U.S.C. § 6104(e)(2) (emphasis added). Furthermore, an administrative ADA complaint must be filed "within 180 days from the date the complainant first had knowledge of the alleged act of discrimination." 45 C.F.R. § 91.42(a); *see also Grant v. Alperovich*, No. C12-1045RSL, 2013 U.S. Dist. LEXIS 174322, at *20 (W.D. Wash. Dec. 11, 2013) ("Because there is nothing in the record that suggests that Plaintiff has complied with the notice or exhaustion requirements set forth in the statute and

implementing regulations, her claims under the Age Discrimination Act is dismissed with prejudice."); *see also Kamps v. Baylor Univ.*, No. SA-13-CA-929-OLG, 2013 U.S. Dist. LEXIS 193045, at *10 (W.D. Tex. Oct. 30, 2013) (applying exhaustion requirement to ADA claims set forth by a law school student, ruling that plaintiff's "failure to file a timely administrative complaint with the Department of Education deprives this Court of jurisdiction"); *Enciso v. Presbyterian Healthcare Servs.*, No. 21-323 JCH/JFR, 2021 U.S. Dist. LEXIS 141645, at *18 (D.N.M. July 29, 2021) (dismissing ADA claims for failure to exhaust administrative remedies); *Storman v. Alta Reg'l Ctr.*, No. 2:20-cv-0907-KJM-CKD PS, 2021 U.S. Dist. LEXIS 194521, at *14 (E.D. Cal. Oct. 6, 2021) ("Plaintiff does not allege compliance with the exhaustion requirement for a claim under the Age Discrimination Act of 1975. Accordingly, he fails to state a claim.").

Here, Plaintiff has not alleged that he provided Montreat and the Department of Education with notice, as required under the ADA, prior to filing suit. The 180-day deadline to file an administrative complaint lapsed nearly three years ago. *See* 42 U.S.C. § 6104(e)(2); 45 C.F.R. § 91.42(a). Accordingly, Plaintiff's ADA claims must be dismissed for failure to exhaust administrative remedies. Even if Plaintiff's ADA claims were properly before the Court, which they are not, Plaintiff has not plausibly alleged that he was denied the opportunity to participate in any program or activity on the basis of his age. Instead, Plaintiff barely mentions age anywhere in the Second Amended Complaint, other than an isolated alleged comment by Dr. Bennett: "What are you, 40!" (Second Amend Compl. ¶ 33.) Plaintiff could not build a plausible ADA

claim on that single, out-of-context comment even if he had preserved his right to do so.

Plaintiff has failed to comply with the ADA's exhaustion requirements, and he has not made sufficient allegations to set forth a claim. Accordingly, Plaintiff's Age Discrimination Act claims should be dismissed with prejudice.

      vi.    <u>The Court Should Dismiss Plaintiff's Claim Under 20 U.S.C. § 1232g of the Family Educational Rights and Privacy Act of 1974.</u>

Plaintiff's claim under 20 U.S.C. § 1232g of the Family Educational Rights and Privacy Act ("FERPA") should be summarily dismissed because FERPA also does not provide a private remedy or allow for a private right of action. *See Wiggins v. Martin Cty. Bd. of Educ.*, No. 4:04-CV-17-FL(4), 2004 U.S. Dist. LEXIS 27638, at *9 (E.D.N.C. Aug. 17, 2004) ("[T]o the extent plaintiffs' complaint purports to bring a claim directly under FERPA, that claim must be dismissed. Under 20 U.S.C. § 1232g(f), enforcement of FERPA is left solely to the Secretary of Health, Education and Welfare. No private remedy is granted under the statute.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002)); *accord, Keith-Foust v. N.C. Cent. Univ.*, No. 1:15CV470, 2016 U.S. Dist. LEXIS 106120, at *46-47 (M.D.N.C. Aug. 11, 2016) (dismissing claims set forth under 20 U.S.C. § 1232g because "FERPA provides no such private right of action"). *Carrington*, No. 1:08CV119, 2011 U.S. Dist. LEXIS 166855, at *160 ("[T]he Supreme Court has clearly held that there is no private right of action under FERPA, and that plaintiffs cannot use § 1983 to bring a private cause of action for alleged FERPA violations.")

Here, Plaintiff's FERPA claims are based on conclusory allegations that the Defendants "unlawfully shared Plaintiff's privileged information." (Second Amend Compl. ¶ 96.) Even if this threadbare allegation was sufficient to plausibly allege a violation of FERPA, which it is not, Plaintiff has no right to bring a FERPA claim. Consequently, Plaintiff's FERPA claim cannot survive the Rule 12(b)(6) stage.

    vii.    <u>The Court Should Dismiss Plaintiff's Claim Under "25 C.F.R.<br>§ 11.404" for "False Imprisonment".</u>

Finally, Plaintiff also seeks to bring a claim under 25 CFR 11.404, a criminal regulation applicable to Native American tribes, which provides: "A person commits a misdemeanor if he or she knowingly restrains another unlawfully so as to interfere substantially with his or her liberty."

As with Plaintiff's FERPA claim, this claim should be dismissed because Plaintiff cannot pursue a private right of action under this criminal provision. 25 CFR 11.404 is a provision which "'establishes a misdemeanor criminal offense in the context of Indian affairs and does not provide a private right of action or civil remedy in any context.'" *Montenigro v. Gleason*, No. 3:23-CV-01036, 2023 U.S. Dist. LEXIS 118766, at *17 (M.D. Pa. July 10, 2023) (quoting *Whitfield v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs*., No. 1:21CV34, 2021 U.S. Dist. LEXIS 80079, 2021 WL 1634552, at *2 (N.D. Ohio Apr. 27, 2021)); *accord*, *Ogletree v. Vigil*, C/A No. 17-3724, 2018 U.S. Dist. LEXIS 13791, 2018 WL 582391, at *2 (E.D. La. Jan. 29, 2018); *Brown v. Culick*, No. 3:20-395-MGL-SVH, 2020 U.S. Dist. LEXIS 20354, at *11 (D.S.C. Feb. 4, 2020) ("Plaintiff has no valid claim on which he could prevail under . . . 25 C.F.R. § 11.404, and those allegations are subject to summary dismissal.").

Put simply, Plaintiff cannot sue Defendants under 25 CFR 11.404 "because no such private action exists under" that provision. *See Montenigro*, 2023 U.S. Dist. LEXIS 118766, at *17. Thus, his False Imprisonment claim should also be dismissed under Rule 12(b)(6).

## II. The Court should Strike the Third Amended Complaint

### A. The Third Amended Complaint does not comply with the Federal Rules.

A party may only amend his pleading only once as a matter of right. Fed. R. Civ. P. 15(a). Afterwards, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* "Even in cases with a *pro se* litigant, it is acceptable for the court to strike a complaint that is filed where there is no right to amend as a matter of course, there is no written consent from the opposing party, and there is no leave of the court granted." *Oliver v. PHH Mortgage Corp.*, 3:20-CV-00304-GCM, 2021 WL 354127, at *1 (W.D.N.C. Feb. 2, 2021), *aff'd*, 21-1236, 2021 WL 6101659 (4th Cir. Dec. 22, 2021).

Here, Plaintiff unilaterally filed his Third Amended Complaint without consent of the Defendants and without leave of court. In short, the Third Amended Complaint is not an authorized pleading, and it should be stricken.

### B. Even if the Third Amended Complaint is charitably construed as a motion to amend, the motion should be denied.

Even if the Court were inclined to construe the Third Amended Complaint as a motion to amend, in light of the Plaintiff's pro se status, *see, e.g., Wesley v. Charlotte-*

*Mecklenburg Cnty. Police Dep't*, 3-19-CV-00425-FDWDCK, 2020 WL 5822216, at *3 (W.D.N.C. Sept. 30, 2020), the motion should be denied.

Leave to amend a complaint should be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). In this case, leave should not be granted because the timing of the Third Amended Complaint reveals a pattern of bad faith dilatory tactics, and the amendment would be futile.

   i. <u>The Third Amended Complaint appears to be brought in bad faith</u>

Plaintiff appears to be attempting to use amendments as a tactic to delay judicial review of the merits of his pleadings. Indeed, this is the second time Plaintiff has filed a last-minute amendment just hours Montreat was to file a memorandum in support of its motions to dismiss. In state court, Montreat's motion to dismiss the original complaint was calendared to be heard on October 3, 2023—which meant that its memorandum was due on September 29, 2023. N.C. R. Civ. P. 5(a1) (providing that memoranda in support of dispositive motions must be filed, if at all, two days before the hearing). At 10:31pm on September 28, 2023—after Plaintiff had refused to serve an amended complaint for about four months and after Montreat had invested significant effort in drafting a memorandum in support of its motion— Plaintiff emailed counsel for Montreat the First Amended Complaint, which mooted Montreat's original motion to dismiss.

Now, again, on the day before Montreat's motion to dismiss and supporting memorandum are due, Plaintiff has filed yet another purported amended complaint in an apparent attempt to moot Montreat's motion, increase its legal expenses, and further delay this matter. The unavoidable conclusion that Plaintiff is engaged in mere gamesmanship is bolstered by the fact that the Third Amended Complaint is virtually identical to the Second Amended Complaint and makes the very same claims.

Because the Third Amended Complaint appears to be brought in bad faith, the Court should deny any implicit motion to amend.[4]

ii.  <u>The Third Amended Complaint is futile because it raises the same causes of action as the Second Amended Complaint, which are all subject to dismissal.</u>

"Leave to amend is futile when the amended complaint would not survive a motion to dismiss." *Pickens v. Hendricks*, 1:21-CV-00030-MR, 2023 WL 7386431, at *2 (W.D.N.C. Nov. 8, 2023) (citing *Save Our Sound OBX, Inc. v. N.C. DOT*, 914 F.3d 213, 228 (4th Cir. 2019)).

In this case, Plaintiff's Third Amended Complaint raises the exact same claims as the Second Amended Complaint. The only differences are very minor. Specifically, he now asserts that his First Amendment and Section 1983 claims also relate to free expression, and he clarifies that his false imprisonment claim under the Indian Law and Order Code arises from having to share a tent and bathroom with a person of the

---

[4]  If the Court were to accept the Third Amended Complaint as the operative pleading, Montreat hereby respectfully moves to dismiss the Third Amended Complaint for the reasons detailed in Section I, above.

opposite gender, in violation of his religious beliefs, and from the allegation that one of his professors insisted that he take an exam even though he was sick. (Third Amend Compl. at ¶¶ 61–67, 76–77, 97–98.) None of these new allegations can change the fact that there is no private cause of action under the First Amendment and the Indian Law and Order Code, and they do nothing to plausibly show that Montreat was ever acting under the color of law as contemplated by Section 1983. Accordingly, the Third Amended Complaint is futile because it, too, fails to state a claim upon which relief can be granted.

This Court should deny any implicit motion to amend because the proposed Third Amended Complaint could not survive a motion to dismiss under Rule 12(b)(6).

## **CONCLUSION**

As set forth above, each and every cause of action in the Second Amended Complaint should be dismissed with prejudice under Rule 12(b)(6). The Third Amended Complaint should be stricken because it does not comply with the Rules. Any motion to amend should be denied because such a motion would be made in bad faith and the proposed amendment would be futile. Plaintiff has had ample opportunity to amend his complaint since it was initially filed over a year ago, in October 2022. Nevertheless, Plaintiff has still failed to set forth any plausible claims against the Defendant. For the foregoing reasons, Defendants respectfully request that the Court dismiss this action in its entirety with prejudice.

Respectfully submitted, this the 12th day of January, 2024.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ Jesse A. Schaefer
      Beth Tyner Jones, N.C. State Bar No. 15923
      Jesse Schaefer, N.C. State Bar No. 44773
      555 Fayetteville Street, Suite 1100
      Raleigh, NC 27601
      Telephone: (919) 755-8182
      Facsimile: (919) 755-6752
      Email: jesse.schaefer@wbd-us.com
           beth.jones@wbd-us.com

*Counsel for Defendant Montreat*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing in the CM/ECF system and served the foregoing to the following persons via U.S. mail and email:

Ryan Stevens
23 Sleepy Hollow Lane
Swannanoa, NC 28778
Email: ryan_stevens316@icloud.com
*Pro se Plaintiff*

This the 12th day of January, 2024.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ Jesse A. Schaefer
Beth Tyner Jones, N.C. State Bar No. 15923
Jesse Schaefer, N.C. State Bar No. 44773
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8182
Facsimile: (919) 755-6752
Email: jesse.schaefer@wbd-us.com
        beth.jones@wbd-us.com

*Counsel for Defendant Montreat*

27