# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| RYAN CRAIG STEVENS<br><br>Plaintiff,<br><br>v.<br><br>MONTREAT COLLEGE;<br>DR. PAUL J. MAURER;<br>DR. DANIEL T. BENNETT;<br>DR. DOROTHEA K. SHUMAN; and<br>DR. RYAN T. ZWART,<br><br>Defendants. | Case No. 1:23-cv-00284-MR-WCM<br><br>**MOTION TO ALTER OR<br>AMEND JUDGEMENT**<br><br>FILED<br>ASHEVILLE, NC<br><br>MAR 0 4 2025<br><br>U.S. DISTRICT COURT<br>W. DISTRICT OF N.C. |

Pursuant to Rule 60 of the Federal Rules of Civil Procedure, Plaintiff, Ryan Craig Stevens, respectfully moves the Court to alter or amend the following:

1. Memorandum of Decision and Order (D.E. 63).

2. Clerk's Judgment (D.E. 64).

3. Court's Order (D.E. 75).

In support of this motion, Plaintiff states the following:

The Court erred in referring the [First] Amended Complaint as the Second Amended Complaint, because it erroneously considered the pre-removal amended complaint as the first amendment. It is imperative to distinguish the substantial procedural differences between state and federal courts, particularly that Rule 15(a) of the Federal Rules of Civil Procedure does not apply in state court proceedings. The [First] Amended Complaint, filed post-removal, should neither be regarded as the Second Amended Complaint nor as Plaintiff's one matter of course amendment, because the Court ordered the action **sua sponte**. The Court's characterization of the [First] Amended Complaint and its misinterpretation of Rule 15(a), particularly concerning the timing and waiver mechanisms, are fundamentally flawed. Moreover, granting an amendment is justified, especially considering the newly discovered prima facie evidence, which remains uncontested by Defendants.

**Plaintiff's motion, under rule 59(e), was timely filed, as is evident per the <u>docket history</u>:**

Pursuant to Rule 59(e) of the Fed. R. Civ. P., "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment" in which period initiation begins upon proper notice.

Pursuant to Rule 77(d)(1), "[i]mmediately after entering an order or judgment, the clerk must serve notice of the entry, as provided in Rule 5(b), on each party who is not in default for failing to appear."

The Court violated Rule 77(d)(1) by failing to serve Plaintiff notice of the Judgment (D.E. 64), including the Memorandum of Decision and Order (D.E. 63) and an order setting the deadline to file a motion, under Rule 59(e) and Rule 60 of the Fed. R. Civ. P., in which the procedural error has prejudiced Plaintiff, warranting equitable relief in the form of an extension to resolve the administrative failure.

Pursuant to Rule 6(d) of the Fed. R. Civ. P., "When a party may or must act within a specified time after being served and service is made under rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), 3 days are added after the period would otherwise expire under rule 6(a)."

On November 4, 2024, the Court filed the Memorandum of Decision and Order (D.E. 63), entering Judgment (D.E. 64), but failed to serve the mandated notice of it to Plaintiff, pursuant to Rule 77(d)(1).

28 days from November 4, 2024 is December 2, 2024.

On November 5, 2024, certificate of service by the Defendants was entered (D.E. 65).

Adding three days, under Rule 6(d) of the Fed. R. Civ. P., to November 5, 2025 is November 8, 2024.

**28 days from November 8, 2024 is December 5, 2024.**

On November 12, 2024, Plaintiff received Defendants' notice of the Judgment via mail (delivered to his landlord's mailbox in which uncertified, or unregistered, mail has been lost).

**28 days from November 12, 2024 is December 10, 2024.**

On December 4, 2024 – within 28 days from receipt of the Judgment entry notice – the Motion was filed, incorrectly, as <u>**case No. 1-24-cv-00235-MR-WCM**</u>, rather than case No. 1:23-cv-00284-MR-WCM (the "Original Action"), described as "Motion for Miscellaneous Relief" (D.E. 7), which it is to be Stricken, along with Defendant's response, "Brief in Opposition for Court to Reverse Decision…" (D.E. 10).

On December 5, 2024 – after discovering the filing error on December 4, 2024, after hours – Plaintiff refiled the Motion via **mail**, because he was **out-of-state** (Ex. 2), and **restricted from the CM/ECF system.**

**The response expiration date, extending through at least December 6, 2024, had not expired.**

Per Section I.A.1 of the Administrative Procedures Governing Filing and Service by Electronic Means, "Parties proceeding pro se shall not file electronically," restricting electronic filing, constituting a substantive due process violation, because it reduces Plaintiff's response and reply periods by at least 8 hours, as the Clerk's Office closes as 4:00 P.M. on weekdays, per the Clerk's Office Hours of Operation, considering non-pro se litigants may file until 12:00 A.M. of the deadline date.

On December 30, 2024, via "TEXT-ONLY ORDER," the Court granted Plaintiff's "Motion to Modify Court's Docket Text (Undocketed and Unissued Order) Establishing Reply Deadline" (D.E. 71) – construed as a motion for an extension of time – applying Rule 6(d) of the Fed. R. Civ. P., concurring: "three days [must be] added for mailing under Fed. R. Civ. P. 6(d)," and" "[filings may] be postmarked by [the deadline, after the addition of three days]" (undocketed order), as Plaintiff is a pro se litigant, restricted from utilizing the CM/ECF system.

As mentioned supra, Plaintiff timely filed the motion, under Rule 59(e) of the Fed. R. Civ. P., especially considering the totality of the circumstances, including, but not limited to, the following: 1) Court's failure to issue procedural documents and notices to Plaintiff; 2) ambiguous orders; 3) effects of Hurricane Helene; and 4) recovery from the catastrophic aftermath of Hurricane Helene.

Pursuant to Rule 59(e) of the Fed. R. Civ. P., the 28-day deadline for filing a motion to alter or amend judgment is considered a claim-processing rule, rather than a jurisdictional deadline, as the Fed. R. Civ. P. are established by the Supreme Court to govern procedural aspects of court proceedings, created to manage the cases in which Courts have the discretion to extend claim-processing deadlines, due to good cause, or excusable neglect, unlike jurisdictional deadlines, which must be adhered to: "A court-made rule prescribing a time limit for filing notice of an appeal is not jurisdictional. It is a mandatory claim-processing rule that may be waived or forfeited." Hamer v. Neighborhood Housing Services of Chicago, 583 U.S. 17 (2017).

## I. The Court failed to reasonably consider the case in which it denied Plaintiff the right to:

1. receive equitable relief, founded on a comprehensive explanation of the rationale, pursuant to Rule 52(a) of the Fed. R. Civ. P., which provides: "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58";

2. receive issuance of the orders, decisions, judgements, and deadlines, pursuant to Rule 77(d)(1) of the Fed. R. Civ. P., and 58(b)(1)(C) of the Fed. R. Civ. P., which provides in part: "Immediately after entering an order or judgment, the clerk must serve notice of the entry, as provided in Rule 5(b), on each party who is not in default for failing to appear. The clerk must record the service on the docket";

3. amend the Complaint, pursuant to Rule 15(a)(1)(B) in which "[t]he court should freely give leave when justice so requires," pursuant to Rule 15(a)(2) of the Fed. R. Civ. P., and "If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits [regarding the new evidence]," pursuant to Rule 15(b)(1) of the Fed. R. Civ. P, in which **Defendants do not contest the new prima facie evidence**. The purpose of the amendment is to clearly and succinctly present the case, correct errors, add and omit claims, add evidence, and add the following defendants, so the case will be decided on its merits: BOARD OF TRUSTEES; MIGUEL CARDONA, in his Official Capacity as Secretary of Education; and the UNITED STATES DEPARTMENT OF EDUCATION;

4. receive consideration of the new evidence, pursuant to Rule 59(e) of the Fed. R. Civ. P.;

5. be granted discovery, pursuant to Rule 26 of the Fed. R. Civ. P.;

6. be granted a jury trial, pursuant to the Seventh Amendment and Rule 38 of the Fed. R. Civ. P.

On October 22, 2020, Defendant Montreat College's faculty, Professor Pupoh, clarified Defendants were deliberately indifferent toward Plaintiff's religious beliefs:

> "I am not suggesting that any of the staff or faculty at Montreat has hardened their hearts to the Gospel. However, **it is clear** that they **feel very strongly** about this piece of your **presentation** and are **unwilling to budge** on it."
>
> **"The college could not keep its accreditation nor receive government-funded financial aid if the Gospel of Christ overshadowed the technical skill. It's a challenging balance, but it is the <u>bottom line</u>."** Maybe, as given by Jesus, wisdom is to save it for more 'fertile' ground. By **removing this from your presentation**, you are not disobeying the Lord's word in proclaiming the Gospel. Instead, you are choosing to wait for fertile ground to reveal itself…**you must take out what is not absolutely necessary**…There are time restrictions that will prevent you from displaying your technical skill and knowledge AND the **Gospel of Christ**…Do what it takes to [graduate]. [T]hen go…start your **ministry** to **share the Gospel.**"
>
> (emphasis added) (Ex. 1 at 1 ¶ 8). Professor Pupoh (personal email communication, October 22, 2020).

The reasoning for Defendants' conspiracy of deliberate indifference, retaliation, prejudice, and infringement and deprivation of Plaintiff's constitutional rights and educational performance, opportunities, and benefits is apparent, as Professor Pupoh clearly states their intentions were to restrict Plaintiff's religious expression within coursework.

On October 19, 2020, Defendant Zwart ordered Plaintiff to "[not] use Christian belief" on-campus and off-campus, stating, in part:

> "Ryan, I wanted to give some feedback regarding class today. **I HIGHLY caution you on using Christian belief** as a means of suicide prevention in the future…I know that your statements today negatively influenced the class as I received a phone call from one of your classmates noting that this was very challenging to hear as well. The claim that inculcating someone into the **Christian faith** as a suicide preventer is not only **misguided**, it also is wholly **unempathetic** for those who have experienced a loss due to the clutches of mental illness. Please keep this feedback in mind in the future." (emphasis added) (Ex. 2)

On April 16, 2020, Defendant Shuman stated:

> "I made this comment earlier. You are not talking about stewardship at this point. It does not fit here," while **omitting Plaintiff's following religious content** from the literature review paper, rather than suggesting it to be transferred to another section: "Whether it be preservation or conservation, each protected area has a unique purpose toward benefitting the public interest in which God has called humanity to be good stewards of the world: 'The Lord God took the man and put him in the Garden of Edan to work it and take care of it' (Genesis

2:15, [NIV]). According to scripture, the Lord, Jesus Christ, also has a special purpose and plan for every person (Jeremiah 29:11). Therefore, as we glorify God, let us work together to exemplify Him through good stewardship of this beautiful and fruitful world that He has entrusted us to responsibly manage." (emphasis added) (Ex. 3).

On 04/30/20, Defendant Shuman instructed the tutor overseer to cease rendering services to Plaintiff, depriving him of educational performance, opportunities, and benefits:

> On 04/30/20, Professor Hawley (tutor overseer), notified Plaintiff the following: "Ryan, I really wish that we could do more, but [**Defendant**] **Shuman** gave us the impression that the paper is past due, and **specifically suggested that we should let you take over from here**. If Dottie is fine with you continuing to revise, then we can look over another draft, **but I just want to be careful and respect her request** in the meantime. Thanks for your patience, and again, **I'm sorry we couldn't help you out a bit more**." (emphasis added) (Ex. 4)

On June 21, 2024, **Plaintiff filed a voluntary dismissal** (D.E. 58, No. 1:23-cv-00284-MR-WCM), prior to an Answer and motion for summary judgement. Pursuant to Rule 41(a)(1)(A) of the Fed. R. Civ. P., "Without a Court Order […], the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."

## NEW PRIMA FACIE EVIDENCE

### Equal Protection Clause / Age Discrimination Act of 1975 / Fair Housing Act of 1968

On its face, the policy cited by Defendant Montreat College, under which Plaintiff was denied on-campus housing, as a student, is unlawful and unconstitutional, as it is discriminatory against Plaintiff's age (older than 26 years of age), evident per the following statements:

Pursuant to the Student Handbook On-Campus Residency Requirements provision of the Residency Life policy, "Students **over 26 years of age** will generally **not be eligible for on-campus housing** unless given special permission." (emphasis added) (Ex. 5 ¶ 2).

### Denial of On-Campus Housing / Fifty Percent Reduction of Scholarships

On June 26, July 3, July 11, and twice on July 19, 2019, Plaintiff was denied on-campus housing, because he was "[older than] 26 years of age" (Exs. 5-10), pursuant to the Student Handbook policy (Ex. 5 ¶ 2), in which the scholarships were "reduced by 50%," due to the on-campus residency requirement (Ex. 7).

On June 26, 2019, the Admissions Counselor, Christy Shores, states, "Regarding housing, we do not have housing available for students to live **on campus** once they are **past the age of 26**. You will need to find housing **off campus** or close to campus and **can unfortunately not live in the campus dorms**." (emphasis added) (Ex. 6).

On July 3, 2019, the Student Financial Services Counselor, MacKenzie May, states, "**Our policy** is that the institutional scholarships of students living off campus are **reduced by 50%** (unless appealed due to medical expense, allergy/dietary issue, or significant loss of income), as these scholarships are based on full-time, **on-campus enrollment**…I'm afraid I cannot increase any of the institutional aid you've been offered…" (emphasis added) (Ex. 7).

On July 11, 2019, the Student Financial Services Counselor, MacKenzie May, regretfully states, "Ryan, I was unaware **you are an adult student** and as such, are **not able to live on campus** in the dorms. I'm sorry…" (emphasis added) (Ex. 8).

On July 19, 2019, the Housing Coordinator, Kathleen Walden, states, "**Our policy** is as follows below [a]nd can be found at this link […] On-Campus Residency…**Students over 26 years of age will generally not be eligible for on-campus housing**…" (emphasis added) (Ex. 9).

On July 19, 2019, the Admissions Counselor, Christy Shores, states, "I am re-sending the email that I sent you to on Wednesday June 26 that states that **on-campus housing isn't available for students over age 26**. You can absolutely **live off campus**, you will just need to find it!" (emphasis added; exclamation point in original) (Ex. 10).

Defendants committed age, sex, and disability discrimination against Plaintiff.

*See Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000) (holding: "Because we find that in a case alleging discrimination under the Fair Housing Act the **discrimination itself is the harm**, we will reverse the decision of the District Court…"

## Americans with Disabilities Act (ADA)

Defendant Montreat College failed to consider Plaintiff's physical impairment, after the Housing Coordinator, Kathleen Walden, was informed, on July 19, 2019: "[he] sustained a sever[e] injury (having been ran over by a tractor-like vehicle that weighed approximately eight tons), which has caused financial issues" (Ex. 12) in which she forwarded the e-mail to Admissions Counselor, Christy Shores (Ex. 9), ordering Plaintiff "…fill out the Housing Form and list that you will be living off campus" (Ex. 11). The amended complaint will include the disability discrimination claim, aiding in presenting the case's merits.

Pursuant to Rule 15(a)(1)(B) of the Fed. R. Civ. P.: "A party may amend its pleading once as a matter of course within…21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

On December 29, 2023, Plaintiff filed the [First] Amended Complaint (Doc. 14), pursuant to the Court's Order (Doc. 4).

Plaintiff's [First] Amended Complaint (D.E. 14), dated December 29, 2023, moots Defendant Montreat College's Motion to Dismiss, dated 01/12/2024 (D.E.s 18, 19).

On January 30, 2024, the Individual Defendants filed a Motion to Dismiss (D.E.s 24, 25) to the [First] Amended Complaint (filed on December 29, 2023), filed **after the deadline of January 12, 2024** (18 days late), pursuant to Rule 15(a)(3) of the Fed. R. Civ. P., rendering their response ineffective, constituting a forfeiture of their right to contest the claims, pursuant to Rule 12(a)(1)(A) of the Fed. R. Civ. P.

The Court erred in referring the [First] Amended Complaint as the Second Amended Complaint, because it considered the amended complaint, prior to removal, as the first amendment. Apparently, there is a substantial difference between the state and federal courts in which Rule 15(a) of the Fed. R. Civ. P. does not apply to state courts. The [First] Amended Complaint, after removal, should neither be considered as the Second Amended Complaint nor Plaintiff's one matter of course amendment, because **the Court ordered the amendment of the complaint sua sponte**. The Court's characterization of the [First] Amended Complaint and its interpretation of Rule 15(a), regarding the timing and waiver mechanism, is erroneous. Granting an amendment is justifiable, especially considering the newly discovered prima facie evidence, which Defendants do not contest.

The state claims were removed from the original Complaint, after the District Court ordered Plaintiff to amend it, due to the Federal District Court's direction, pursuant to the form, Pro Se 1 (Rev. 12/16)

Complaint for a Civil Action case, which instructs pro se litigants to only "[l]ist the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue…" (p. 3).

Plaintiff had the right to file an amended complaint without the court's permission, or the opposing party's consent. *See Sergio Casillas Ramirez v. County of San Bernardino*, 806 F.3d 1002 (9th Cir. 2015). (holding: "In the interest of justice, amendments to pleadings should be allowed with liberality, especially when the amendment would not result in prejudice to the opposing party…We base our decision on a straightforward reading of the text of, as well as our own past remarks about, Rule 15. That is, we previously have considered the phrase matter of course as consonant with 'as of right, implying, if not expressly declaring, that Rule 15 confers a 'right' to amend upon parties. See Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir.2012) (parties have twenty-one days 'to amend as of right'); Rick–Mik Enters., Inc. v. Equilon Enters. LLC, 532 F.3d 963, 977 (9th Cir.2008) (explaining in pre-amendment context that until a responsive pleading is filed or a final judgment dismissing the case is entered, the plaintiff 'had an absolute right to amend'); Shaver v. Operating Eng'rs Local 428 Pension Trust Fund, 332 F.3d 1198, 1201 (9th Cir.2003) (before a responsive pleading was filed and before the case was dismissed, the plaintiffs "had an absolute right to amend their complaint"); Sanford v. Motts, 258 F.3d 1117, 1120 (9th Cir.2001) ( [Rule 15(a) ] 'gives a plaintiff one opportunity to amend as of right. The district court [erred by] not afford[ing] this opportunity.'"); Worldwide Church of God, Inc. v. California, 623 F.2d 613, 616 (9th Cir.1980) ('[A] party may, as a matter of right, amend its complaint once before the filing of a 'responsive pleading' or the entry of final judgment....'). Thus, it is clear that we routinely have viewed Rule 15(a)(1)'s ability to amend as a right, one which is exhausted or limited only by the restrictions set forth in the Rule itself. In other words, before 2009, a plaintiff had the right to amend his complaint up until the point in time when a responsive pleading was filed or within twenty days after service of the pleading if no response was permitted and the case was not on the trial calendar. Since 2009, a plaintiff has the right to amend within twenty-one days of

service of the complaint (15(a)(1)(A)), or within twenty-one days of service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever comes first (15(a)(1)(B)). The Plaintiff's 15(a)(2) amendment, filed first in time, cannot be construed as a waiver or exhaustion of his automatic right to amend under 15(a)(1), so long as that amendment was timely.)"

Pursuant to Rule 15(a)(1)(B) of the Fed. R. Civ. P.: "A party may amend its pleading once as a matter of course within...21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." *See Foman v. Davis*, No. 46-90, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) "Leave to amend shall be freely given when justice so requires, particularly when the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." (holding: "In the absence of any apparent or declared reason...the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.")

"Amendments should be allowed with great liberality in order to permit plaintiffs to correct deficiencies in their pleadings and to promote a full and fair adjudication of the case on its merits" Bose v. Rhodes College, No. 2:16-cv-02308-SHL-cgc (W.D. Tenn. 2018)

### III. The JUDGEMENT IN CASE (D.E. 64) does not act as a final judgment

The JUDGEMENT IN CASE (D.E. 64) does not act as a final judgment of the case, due to the following reasons: 1) the Court violated procedural due process; 2) it is premature; 3) the Court's Memorandum of Decision and Order (D.E. 63) lacks rationale, failing to address the entire case and issues; 4) it is improper; 5) the Clerk did not terminate the case; and 6) it is invalid, due to improper certification, because it does not bear an authentic official seal of the Court.

As mentioned supra, Plaintiff sustained a **severe injury**, resulting in physical impairment, causing substantial pain and financial hardship, requiring **reasonable accommodation**, including, but not limited to, on-campus housing – which was discriminatorily denied, based on Plaintiff's **age, sex,** and **disability** – and need for additional time to file pleadings, including amended complaints, responses, and replies.

**Questions:**

1. After filing the amended complaint, per the Court's sua sponte Order, did Plaintiff have a right to file an amended complaint, as a matter of course, pursuant to Rule 15(a)(1)(B) of the Fed. R. Civ. P.?

2. Did Plaintiff have a right to file a Motion for Leave to File an Amended Complaint, due the prima facie evidence, discovered amongst thousands of emails and before discovery and trial, which is uncontested by Defendants, as the Court should freely give leave when justice so requires, pursuant to Rule (a)(2) of the Fed. R. Civ. P.?

3. Did the Court provide rationale for the Individual Defendants' late responses and tardy removals?

4. Did Plaintiff have a right to file a Motion for Voluntarily Dismissal to refile, pursuant to Rule 41(a)?

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests the Court enter an order granting Plaintiff's Motion to Alter or Amend Judgment, reversing the decisions to: 1) grant Defendants' Motion to Dismiss Plaintiff's Complaint; 2) deny Plaintiff's Motion for Entry of Default; 3) deny Plaintiff's Amended Complaint; 4) deny Plaintiff's Motion for Leave to File an Amended Complaint; and 5) deny Plaintiff's voluntarily dismissal to refile the Complaint.

This the 3rd Day of March, 2025.

By: *Ryan Stevens*

Ryan Craig Stevens
23 Sleepy Hollow Lane
Swannanoa, NC 28778
(865) 469-1950
Ryan_Stevens316@icloud.com

Plaintiff in pro se

13 of 14

Case 1:23-cv-00284-MR-WCM    Document 79    Filed 03/04/25    Page 13 of 14

## CERTIFICATE OF SERVICE

I, PLAINTIFF, hereby certify the foregoing was filed, this day, by delivering it to the clerk, and a copy executed, contemporaneously, to be served upon Defendants' counsel, via the United States mail, addressed as follows:

>Beth Tyner Jones, N.C. State Bar No. 15923
>Jesse A. Schaefer, N.C. State Bar No. 44773
>Womble Bond Dickinson (US) LLP
>555 Fayetteville Street, Suite 1100
>Raleigh, NC 27601
>Telephone: (919) 755-8125
>Facsimile: (919) 755-6752
>Email: Jesse.Schaefer@WBD-US.com
>Email: Beth.Jones@WBD-US.com
>
>Counsel for Defendants, Montreat College, et al.

This the 3rd Day of March, 2025.

By: /s/ Ryan Stevens

Ryan Craig Stevens
23 Sleepy Hollow Lane
Swannanoa, NC 28778
(865) 469-1950
Ryan_Stevens316@icloud.com

Plaintiff in pro se